May it please the court. My name is Drew Shoffler. I represent Lisa Wilcox in the matter before you today. We are here today to ask this court to reverse the district court's dismissal of my client's cause of action against the defendant United States, as well as reverse the district court's granting of the motion for summary judgment on behalf of defendant Lake Regional Hospital. Your Honor, what we have here is an instance where we have alleged that on July 1st, 2011, Lisa Wilcox was allegedly misdiagnosed by Dr. Robert Nielsen and Dr. Russell Johnson, who we allege misdiagnosed a breast cancer lesion, if you will. We brought our cause of action against Richland Medical Center, doing business as Central Ozarks Medical Center, Dr. Nielsen, Dr. Johnson, among others. We filed that cause of action on June 28th, 2013, but unfortunately unable to provide the affidavits of merits required by Section 538205, it was dismissed without prejudice on January 8th of 2014. Under the Missouri It was about that time, Your Honor, approximately that time, Your Honor, that we also filed our Federal Tort Claim Act notice. Your Honor, when the... We've studied the district. Yes. We want to have the legal issue about employment. Yes, Your Honor. When it comes to whether or not we timely filed our Federal Tort Claim Act, we'd like the court to take particular attention to the estate of Bowman, if you will. In the estate of Bowman, of course, the court recognized that looking at Section 2679D5, there's basically four requirements. Basically, there must be an initial cause of action in which the United States was substituted as the party defendant. The initial cause of action must have been dismissed pursuant to Section 2675, subparagraph A. The initial cause of action must have been filed within the two-year statute of limitation period required. And after dismissal of the initial cause of action, the plaintiff must have filed the instant action with the appropriate federal agency within 60 days. Your Honor, in looking not only at the fact that we did file the Federal Tort Claims Act notice requirement in conjunction with our refiling within the Missouri Savings Statute, we would like the court to particularly take note that not only does the estate of Bowman state that it provides protections for plaintiffs who are unaware that the particular employee, in this case a doctor, may be protected under the FTCA and therefore be considered a federal employee. Not only that, but Bowman takes great length to also discuss the case of Fornaro-Sarraro from Puerto Rico in 2002, as well as Bryant v. U.S. and Filanski, which basically states, Your Honor, that if a plaintiff is diligent but still unaware that the, in this case the defendant doctor is an employee, there are certain provisions which allow the FTCA claim to be filed outside the required two years. When, in this particular case, Your Honor, what we are basically saying is that the cause of action was originally filed against the defendant doctors and Central Ozarks, in this case Richland Medical Center, within the appropriate two year statute of limitations for medical negligence cases in the state of Missouri. When we were able to, when we were not able to get the Affidavits of Merit, we had to dismiss it, but we refiled it within that period of time and also refiled the Federal Tort Claims Act. That is the reason why we believe, Your Honor, it was timely filed. In fact, Your Honor, as part of our index and documents for your review, a review of the Missouri Secretary of State filings do not reveal that Richland Medical Center is a federally qualified health center. Once it was ascertained that it was, it was immediately filed, the FTC claim that is, and the matter proceeded forward. Now, when the matter was filed in 2015, it was approximately almost a year later that the defendants then asked for the Notice of Removal to Federal Court, as well as a Notice of Substitution, asking for the United States of America to be substituted for Dr. Johnson, Dr. Nielsen, and Richland Medical Center. Now, because we believe that it was timely filed, I'd like to now point to the second issue, if I may, and that is that of employment. You see, Your Honor, we do not believe that Dr. Nielsen was entitled to FTCA protection at this time, because not only was he an employee of Richland Medical Center, but he was also an employee of Lake Regional Hospital at the time, almost a dual employee, if you will. If you have a dual employee situation, in other words, he is an employee of the United States, and the court are assuming that the United States can still substitute him. I'm not saying that they couldn't necessarily substitute, if you will, but we believe that with working as an employee of Lake Regional Hospital, which we have alleged in this, in our petition, does not afford him FTCA protections for his conduct while working within the course and scope. So you're saying, if you sue him, and he's an employee of Lake Regional, and you sue him for something he did, of course it's work for Lake Regional, then what happens? Well, Your Honor, at this point, well, Your Honor, I would argue that in this case, respectfully, Dr. Nielsen is trying to have his cake and eat it, too, if you will. In other words, he is not only an employee of Lake Regional Hospital, which is not a federally qualified health center, but is also an employee of Richland Medical Center. And in that point, you know, if he commits acts of medical negligence as the employee of Lake Regional Hospital, we do not believe he should be given the protections under the FTCA. Did you plead that any of the actions with respect to your client were connected to his conduct? Yes, Your Honor. In looking at the petition, we did say that he was an employee of both. And if you look at our brief, it kind of discusses some of the situations to where the Lake Regional Hospital exerted a great amount of control, if you will, over Dr. Nielsen. Did he evaluate your client at Lake Regional? Did he have a son? Lake Regional Hospital did perform the imaging for which Dr. Nielsen looked at, and what your Honor, I cannot speak about that with 100 percent certainty. At the time that the matter was removed, we had not had an opportunity yet to take the depositions of Dr. Nielsen. We only took the depositions of the corporate representatives for Lake Regional Hospital and Richland Medical Center as a determination of employment in order to address the motions for summary judgment and the timeliness argument. What evidence is there that Lake Regional employed Nielsen? Well, Your Honor, yes, Your Honor, and that was one point that I specifically wanted to focus on was in the district court's order, there was great emphasis put on the fact that yes, he did have staff privileges, but that doesn't necessarily make him an employee. I would submit to you and this court, in our brief, we have provided a considerable amount of factual evidence provided by the corporate representative for Lake Regional Hospital saying what requirements they had for Dr. Nielsen. He had to live within a certain amount, a certain distance, if you will, to be there by time. He had to not only see the patients that he may have from Richland Medical Center, but he would also have to see quote-unquote unassigned patients, which were basically... He didn't have any type of formal contract. I'm sorry, Your Honor? He didn't have any type of formal contract. Well, Your Honor, I... He just had staff privileges. Well, Your Honor, when that question was asked of the corporate representative for Lake Regional Hospital, he stated that he had not reviewed the file to see if there was any type of formal agreement between the two. In the paperwork before you, we did include what we were able to obtain, which was a letter granting him staff privileges from Lake Regional Hospital. But that staff privilege is not an employment contract. And Your Honor, I'm not arguing that the staff privileges in and of themselves constituted employment. What I... Or is it that they didn't pay him? No, Your Honor, but as I stated, he did treat his patients at Lake Regional Hospital. He was required to abide by the bylaws of the hospital. Any violation thereof would result in his termination. Termination of staff privileges? Yeah, termination of his ability to be able to work there, for lack of a better word. Your Honor, he also had to keep up certain certifications. He was required to undergo a performance review every two years. Lake Regional Hospital restricted him to the certain types of treatments that he could perform on patients while at Lake Regional Hospital. They also required him to have performed 100 gynecological procedures in two years, as he had to follow a certain surgical scheduling protocol at Lake Regional Hospital. When asked whether or not Lake Regional Hospital could revoke his operating theater privileges, that was never given a distinct answer. It was just stated that they would not do that. And Your Honor, we believe that if one were to look at the instances, if you will, of the type of control that Lake Regional Hospital exerted over Dr. Nielsen, I believe that that type of control shows that there was a principal-agent relationship between the two, and as such, he was an employee of Lake Regional Hospital at that time. If it pleases the Court, I'd like to finish at this moment to retain time for rebuttal. Mr. Walsh, I'll give the floor to the United States. May it please the Court. On behalf of the United States of America, I would like to urge the Court to affirm the very well-reasoned order of substitution and dismissal by Judge Harpool in this case. In order to answer Judge Grinder's question and give you just a little bit of context of the facts of this case, down in the Osage Beach area at the Lake of the Ozarks, there's a little clinic, the Central Ozarks Medical Center. It's part of Richland Medical Center and a couple, several miles away is Lake Regional Hospital, which is really the only hospital in that area until you get to Jefferson City or Columbia. So in this particular case, this little Central Ozarks Medical Center, little one-story brick building where these OBGYNs provide medical services to women. So both Dr. Nielsen and Dr. Johnson, they are OBGYNs. They are not radiologists. They perform no radiology services at the Central Ozarks Clinic. In this case, Ms. Wilcox was seen in 2011 by Dr. Johnson, who referred her out for radiology services to determine the diagnosis for a suspicious finding in one of her breasts. She then went to Lake Regional Medical Center independently. She didn't have to go there for the radiology services. They were performed by Dr. Vieira, who the plaintiff sued in his first state court lawsuit. The images were never even transferred back to Central Ozarks. They just get a radiology report saying that the findings are benign. Those are reviewed by Dr. Nielsen, who does have privileges at Lake Regional. Dr. Johnson doesn't even have privileges there. And the privileges are limited to OBGYN care. So when he refers to unassigned patients at Lake Regional, he's talking about if you're there to deliver one of your patient's babies and somebody comes in who doesn't have a doctor, you might have to provide OB services for that patient. Dr. Nielsen never had any radiology duties at Lake Regional. So just to give you that context. So the first issue in the case is substitution of the United States. The U.S. Attorney, Tammy Dickinson, at the time issued a declaration that these doctors in this clinic were all within the course and scope of their employment and all of the actions that they took in this case. That is prima facie evidence that the United States should be substituted. In an attempt to prevent dismissal of the case pursuant to the statute of limitations, the plaintiff then began making this sort of tortured argument that these doctors were employees of Lake Regional because he wanted to proceed against these doctors under the state court statute of limitations. The federal statute of limitations is two years from accrual of the cause of action you have to file and administrative claim with the appropriate federal agency. Here the plaintiff indicated he did it in 2015. If you look at the record, which I'm sure your honors have, it was actually 2016. So we have treatment by these doctors in 2011 and we have the federal tort claim filed eventually in 2016. So obviously the statute of limitations is the huge issue in this case. So in an attempt to defeat the declaration of the United States Attorney that these doctors were acting within the course and scope of their employment, the plaintiff wanted to talk about staff privileges. Of course that only ended up applying to one of the doctors. It's only OBGYN privileges. So it's just the argument is a non-starter. No treatment was ever performed at Lake Regional. There is, in fact, an employment contract. And it is between the doctors and Richland Medical Center. And it's an exclusive employment contract. Those doctors are not allowed to be employed by any other entity. They're not allowed. Absolutely, Judge. I stated that too broadly. He referred her for radiology. He referred her for further study of her condition. Do you have any scans to refer back to Dr. Wilson for review? Just a report of those scans. So you do your sonogram there with the sonogram machine and then just issue a written report which goes back to the doctors. It goes into Lisa Wilcox's file at the health care center. And Wilson didn't review the scans? No. He just received a report. Right. Who reviewed her radiology? Dr. Vieira at Lake Regional who also claimed to be a private radiologist sued separately from Lake Regional. His practice was sued separately from Lake Regional. And he's the one who moved to dismiss the first state court case because the plaintiff hadn't filed an affidavit of merit that the radiologist had done anything wrong. And then when the plaintiff wasn't able to produce that affidavit of merit that case was voluntarily dismissed by the plaintiff then waited almost the entire year to refile that case. So now we're in 2015 when he refiles the second case all because of actions and delays by the plaintiff. There's no effort during this time period to determine that these doctors were federal doctors to pursue the case against the United States in any way by filing a federal tort claim. So really that's the only challenge to the United States Attorney's Declaration and as the court correctly points out even if you say that under some limited circumstances when the doctors are practicing OBGYN they might be considered a dual employee even then you still have to substitute the United States. You still have to substitute the United States for Dr. Johnson. There's no argument as to him. There's no argument as to Richland Medical Center even being attempted to make by the plaintiff in this case by the appellant. So because of and then when you look at the facts you see that there weren't any overt actions taken to care for Ms. Wilcox at Lake Regional by these doctors who were federal employees. So you can't just make a conclusory statement that Lake Regional was supervising and employing these doctors. You would have to in order to sustain even a claim of dual employment make specific allegations and come forward with specific facts to defeat the U.S. Attorney's Declaration. So then you move to the absolute bar under the federal statute of limitations that's contained within the Federal Tort Claims Act. The express bar of 28 U.S.C. 2401B The FTCA provides for the exclusive remedy for suits against the United States because it's a waiver of sovereign immunity you have to strictly construe that statute of limitations. The only way to save a defective state court filed cause of action if a plaintiff mistakenly files in state court rather than filing an administrative law claim is to follow the factors that are outlined in the Baumann case that Mr. Schaffler mentioned sorry I've lost his name for a moment and that case if you look at it actually supports the United States arguments. The first state court case there was no substitution in the United States the first state court case was not dismissed pursuant to section 2679D the first state court case although timely filed once it was dismissed there was no administrative claim made against the United States within 60 days so the first state court case did not tick three of the four boxes that you have to tick under section 2679. There's no fifth step that if a state law saving statute applies you can extend the federal statute of limitations there's no fifth step that if the plaintiff fails to get an affidavit of merit for his state court case you can extend the federal statute of limitations. The statute of 2679D also must be strictly construed because it is a waiver of the sovereign immunity It could be a tolling under the right facts Yes judge and that's my final argument that the federal statute of limitations can be subject to equitable tolling and equitable tolling is of course only reserved for exceptional circumstances and here we're talking about the most garden variety neglect and delay failure to get an affidavit, dismissal and then waiting until the saving statute has almost expired in state court to refile a state court case making no attempt to determine that these doctors were federal employees The case law in the 8th circuit with the Kubrick case and the Motley case just very specifically state that the plaintiff cannot just ignorantly pursue a case in state court and make no effort to determine that a federal employee is a federal employee The medical malpractice bar is held to a standard of realizing that there are the federal health care centers act there are federally supported health care centers particularly in rural areas and it's incumbent upon the plaintiff to discover that unless the United States were to have taken some affirmative action to hide the fact that they were federal employees rather than website for the clinic, that's the only circumstance in which equitable tolling might be appropriate. So based on those factors I urge the court to affirm Judge Harpool's very well reasoned order May I please court? Excuse me As you know I represent Lake Regional Health System and a plain review of the petition shows that all of the claims against Lake Regional Health System as pled in this case are related solely to the issue of vicarious liability The only allegations of negligence are against Dr. Johnson and Dr. Nielsen. As has been stated there was a radiologist in a radiology group who were originally sued. They were dismissed because there was no affidavit of merit as required by statute against those meaning that they couldn't find an expert to say that there was any deviation from the standard of care as regard to those radiologists. So the only allegations here against Lake Regional are based on the actions of Dr. Johnson and Dr. Nielsen. Originally the plaintiffs had said that Dr. Johnson was an employee of Lake Regional. They have since stepped back from that and said that he was not an employee of Lake Regional so the only claim left is with Dr. Nielsen and to answer the pleading questions there are no allegations in the pleadings that any care was rendered at Lake Regional Health System by Dr. Nielsen. The allegations are that Dr. Johnson referred her for testing again Dr. Johnson is not an employee and he has no staff privileges at Lake Regional but that Dr. Nielsen then read a radiology report and somehow his staff privileges at Lake Regional are being bootstrapped to say he's an employee of Lake Regional. You have to understand this is a very large population and because of that they have physicians in clinics all over the area that are required to do treatments at the hospital if they're to perform surgery or like Dr. Nielsen to deliver babies. He can't deliver babies in his clinic he has to go somewhere to do that and arguing that his staff privileges at Lake Regional somehow equate to employment are conflating the issue of patient safety which the hospital is required to have for its patients and Dr. Nielsen's employment. The requirements of the staff privileges at Lake Regional are meant to protect the patients that are treated at the hospital. Dr. Nielsen there's no dispute that as part of his privileges he's required to live within a certain distance of the hospital because if he has a patient that comes into the hospital that needs immediate treatment he needs to be available to care for that patient. In no way is he employed by Lake Regional based on the staff privileges. He's not provided benefits by Lake Regional. His services are not billed through Lake Regional and as Ms. Walsh touched on there is an employment contract with Richland Medical Center and I put the particular provision in my brief but there's a provision in the contract that says the physician shall not directly or indirectly own, manage, operate or control or be employed by or participate in the ownership, management, operation or control of or be connected in any manner with any business which is directly competitive with the health center and the physician shall not render professional services on his or her own behalf or on behalf of any party other than the health center unless so directed and authorized by the health center. The uncontroverted testimony in this case by the president of Richland Medical Center is Dr. Nielsen never asked for permission to be employed anywhere else and in fact he can't even volunteer his services for charitable causes or anything else without getting permission from the health center which never happened. There's no evidence in this case that Dr. Nielsen at any time was employed by Lake Regional Health System and the Missouri statutes on medical malpractice are very clear. An entity cannot be held liable for the actions of someone who is not its employee and that's section 538.210.2 RISMO subsection 3. The plaintiff tries to in his brief compare this case to the Scott decision which is a 2002 Missouri case talking about employment factors but the thing that the plaintiff ignores is that case is distinguishable as pointed out by Judge Harpool because in that case it was a radiology group in a hospital who provided services solely for that hospital, who was provided office space by the hospital, who was billed through the hospital and it gave the appearance that that radiology group was acting on behalf of the hospital. Here none of those factors apply. We have a contract that says Dr. Nielsen can't be employed by anyone else. We have a patient who never saw Dr. Nielsen at the hospital who never had any interaction with Dr. Nielsen at the hospital and in fact Dr. Nielsen never even referred her for services at the hospital. The only interaction with Dr. Nielsen here is he took a piece of paper that was provided by a radiologist and he read it. He didn't provide her any care in the hospital. He didn't do anything at the hospital and there is no factors here and no facts that show that Dr. Nielsen in any way was employed by Lake Regional Health System. Thank you. Yes, Your Honor. Yes, Your Honor. May it please the Court. To address some of the issues which were brought up by counsel here to my right, I'd like the Court to specifically look at Geale v. United States, the Eastern District of Missouri case in 2011 which basically provides that the claim, FDCA claim can be deemed filed on the date that the civil action is commenced as well as some other requirements. We do believe, Your Honor, that we did meet the timeliness standards under Section 2679 D5, particularly as it pertained when one applies the Missouri Savings Statute. Now, granted, I know that counsel made the argument that there's no provision that states that the Missouri Savings Statute applies to federal law but then there's no prohibition that I've been able to find in Missouri case law stating that it's not. I would take a certain amount of exception to the fact that there was a statement made that there was no diligence done by plaintiff's counsel in order to determine whether or not they were federal employees. We did like I said, when we did find out about it, we did at the time we filed the Federal Tort Claims Act notification. As it pertains to the employment, we are alleging that Lake Regional Hospital is vicariously liable for the actions of its employee, Defendant Nielsen. Specifically, I would like the court, if they would like to look at some of the employment factors cited for Scott, that is in pages 33 and 34 of our original brief. But overall, the factors that made Defendant Nielsen an employee of the hospital, not only with the distance requirement, but he was required to have those certifications above and beyond those required by Lake Regional. Lake Regional did keep a separate employee file for Defendant Nielsen. Defendant Nielsen was a member of a Lake Regional department separate from that of Richland Medical Center. In fact, Lake Regional Hospital actually promoted him or advertised him on their website as being one of their doctors. Not only did he have to follow the scheduling and surgical protocols, but Lake Regional basically set out the performance reviews and what privileges he was allowed to have. But they also required Defendant Nielsen they also provided a nurse, if you will, to assist Defendant Nielsen in treating patients at Lake Regional Hospital. So for that matter, Your Honor, we believe that he was an employee of Lake Regional Hospital. Thus, he has not afforded protection under the Federal Tort Claims Act and we ask this Court to reverse Judge Harpool's decision of dismissing with prejudice the claims against the Defendant in the United States as well as we ask this Court to reverse Judge Harpool's granting for the motion for summary judgment. And with that, I conclude. Thank you, Your Honor.